# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| DALE A. BARTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:08-CV-65-PRC |
| | ) | |
| UNITED STATES POSTAL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
## OPINION AND ORDER FOR ENTRY OF FINAL JUDGMENT

This is an action by Plaintiff Dale Barton against Defendant United States Postal Service ("Postal Service") to recover for the alleged loss of a laptop computer that Mr. Barton mailed by insured mail following a sale on eBay. The Postal Service denied his insurance claim, and after two unsuccessful administrative appeals of the denial, Mr. Barton filed this action in the Lake Superior Court. This matter came before the Court for a bench trial on April 20, 2009. Mr. Barton appeared in person. The Postal Service appeared by Joseph S. Reid, Assistant United States Attorney, and by Sharon Peterson, an employee of the Postal Service. Mr. Barton presented evidence and rested. The Postal Service presented evidence and rested.

After hearing all of the evidence, taking into account the credibility of the witnesses, and considering the parties' pleadings and the exhibits admitted into evidence, the Court hereby makes its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) and orders entry of final judgment.

### PROCEDURAL BACKGROUND

Mr. Barton filed a Notice of Claim in the Lake Superior Court on February 6, 2008, seeking recovery of the value of property he had shipped insured by the Postal Service. On February 25,

2008, the Postal Service removed the case to this Court, and on March 18, 2008, the Postal Service filed an Answer. The Court has subject matter jurisdiction pursuant 39 U.S.C. § 409(a).

The Postal Service filed a written consent for the Magistrate Judge to conduct any and all proceedings including trial. Mr. Barton appeared in person for the initial Scheduling Conference on May 22, 2008, and consented both orally and in writing to the exercise of jurisdiction by the Magistrate Judge. Accordingly, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**FINDINGS OF FACT**

1. Mr. Barton placed an ad on eBay to sell a laptop computer with a "Buy It Now" price of $1,399.00 with shipping to be paid by Mr. Barton for United States Postal Service Parcel Post Service within the United States if purchased with the "Buy It Now" price.

2. The sale ended on January 2, 2007, when Mr. Barton was notified that "vegaskyle" won the bid for $1,399.00.

3. "Vegaskyle" was the eBay user ID for Kyle Adams who lived in Bend, Oregon.

4. Mr. Barton received a Note through PayPal from someone using vegaskyle's Buyer ID telling him: "PLEASE SEND THE ITEM ASAP. THIS IS VERY URGENT. PERHAPS YOU WILL BE UNDERSTAND BOUT MY SITUATION AND CONDITION. SO SHIP IT NOW!!!!." Def. Exh. 8.

5. The Paypal "Transaction Details" shows that Mr. Barton charged vegaskyle $1,399.00 for the purchased item plus an additional $90 for shipping (including any seller handling fees), totaling $1,489.00, with the shipping listed as "USPS Global Express Mail."

6. The "Shipping Address" listed on the PayPal "Transaction Details" was for a Michael Combs in Kennewick, Washington, and the payment was made from Combs as an "instant payment" from Combs' PayPal account.

7. The Paypal "Transaction Details" warns that the seller must ship to the "Shipping Address" in order to be protected under PayPal's Seller Protection Policy.

8. Mr. Barton believed the transaction would be covered by PayPal's Seller Protection Policy.

9. PayPal transferred the $1,489.00 from Combs' PayPal account to Barton's PayPal account on January 2, 2007.

10. The "Transaction Details" printout shows that later on January 2, 2007, PayPal put a "temporary hold" on the $1489.00 in Barton's PayPal account.

11. On January 5, 2007, Mr. Barton took a box to the Gary, Indiana, Post Office. The box was addressed to Combs in Kennewick, Washington. He mailed the box by Priority Mail for a cost of $31.60 and purchased insurance coverage in the face amount of $1,489 at a cost of $17.00. The counter receipt admitted into evidence shows that the box weighed 20 pounds 1.4 ounces when it left Gary on January 5, 2007. The Postal Service "Track/Confirm – Internet Item Inquiry - Domestic" printout admitted into evidence shows that the box was expected to arrive in Kennewick, Washington, on January 8, 2007.

12. On January 8, 2007, Mr. Barton called PayPal to inquire about coverage under the PayPal Seller Protection Policy. PayPal responded that, for there to be coverage, Barton would have to be able to "provide reasonable proof of delivery."

13. Mr. Barton testified that he was able to contact Combs in Washington and directed Combs to reject delivery of the package. Once the box arrived in Washington, it was marked "Refused Return to Sender." When the box left Washington for return to Indiana, it weighed 20 pounds.

14. On January 10, 2007, PayPal updated the transaction to a "Reversal" and then to a "Refund," refunding the money to Combs.

15. Upon return of the box to Gary, Indiana, a notation "left notice" was written on the box. This note is explained by Postal Service witness Sharon Peterson as evidence that a notice to Barton had been left by his mail carrier that the box was in Gary and could be picked up at the branch post office nearest his home. Ms. Peterson testified that she has worked for the Postal Service for nearly thirty-five years. Her present duties include handling customer claims and inquiries, and, in this capacity, she took the insurance claim of Mr. Barton.

16. Mr. Barton picked up the box and took it home. At trial, he testified that when he opened the box at home, the contents were a white block of styrofoam, a brick, and the original software but the computer and other hardware in the box were missing. Mr. Barton testified that he opened the box alone in his home office at the back of his home, discovered the altered contents, called out to his financée, Quintella Logan, to come to the back of the house and to get her camera, and took digital photos of the box. At trial, however, Ms. Logan, testified that they opened the package together in the living room. Ms. Logan testified that she told Mr. Barton that they needed to take the package back to the post office right away.

17. Mr. Barton testified that he called the post office and was advised to file a claim. He testified that the same day or the next day, he filed a claim at the Main Post Office in Gary to

recover on the postal insurance. Ms. Peterson was his contact person, gave him the claim form, and advised him how to fill it out. From that point forward, the Postal Service maintained custody of the box.

18. In his insurance claim, Mr. Barton claimed that his computer had been stolen by someone at the Postal Service who put a cement block in the box in place of the laptop and resealed the box.

19. When Mr. Barton brought the box back to the Post Office to file the insurance claim, the box weighed 11 pounds.

20. Mr. Barton's theory of the case is that someone at the Postal Service opened the box, stole the computer, and resealed the box.

21. In the second of his two administrative appeals, Mr. Barton wrote that, when he prepared the box for shipping, he sealed the "parcel with clear packing tape, but upon return there was Red White and Blue USPS tape all around the box." Def. Exh. 1. Ms. Logan testified that she was in the house when Mr. Barton packaged the laptop with clear packing tape and that she was with him when he took the box to the post office to mail.

22. Ms. Peterson identified the red, white, and blue tape on the box as the "Priority tape" available at the post office and given to customers by the Postal Service to reinforce a box.

23. Ms. Peterson testified that, in the ordinary course of her employment, she was asked to examine the box so that the Postal Service could review Mr. Barton's appeal of the denial of his insurance claim. Ms. Peterson testified that she examined the box and found that the original mailing label had been placed on top of the red, white, and blue tape. She concluded that the box had only been opened one time because the label was on top of the tape and had not be retaped.

24. On May 2, 2007, Mr. Barton sent his final letter to the United States Postal Service–Claims Appeals in Washington, D.C. to appeal the denial of his insurance claim. Therein, he concludes that "there is no other reasonable conclusion other than" that the box had been opened and resealed with tape other than the tape he had originally used while in the custody of the Postal Service.

## CONCLUSIONS OF LAW

Mr. Barton seeks recovery of the lost value of the laptop computer under the insurance he purchased from the Postal Service. The Postal Service is "liable to the owners of lost or damaged mail only to the extent to which it has consented to be liable, and the extent of its liability is defined by the Postal Laws and Regulations. Public Policy requires that the mails shall be carried subject to these regulations . . . and the liability of the Government in case of loss or damage is fixed by these regulations." *Jamil v. USPS*, No. C 05-5121, 2006 WL 988825, at *2 (N.D. Cal. Apr. 14, 2006) (quoting *Twentier v. United States*, 109 F. Supp. 406, 408-09 (Ct. Cl. 1953); citing *Frank Mastoloni & Sons, Inc. v. USPS*, 546 F. Supp. 415, 419 (S.D.N.Y. 1982)); *see also Elsass v. USPS*, No. CV011103, 2003 WL 21537730, at *2 (D. Ariz. Mar. 7, 2003); *Marco v. USPS*, No. C 98-0876, 1998 WL 296367 (N.D. Cal. June 1, 1998) (same).

The Postal Service has waived sovereign immunity for contract claims. *See* 39 U.S.C. § 401(1).[1] However, "traditional contract doctrine does not apply to postal insurance because the 'postal insurance regulations are promulgated pursuant to statutory authority, and therefore have the force and effect of law.'" *Jamil*, 2006 WL 988825 at *2 (citing *Ridgway Hatcheries, Inc. v. United*

---

[1] To the extent Mr. Barton's factual assertions could be construed as a claim sounding in tort, the Federal Tort Claims Act specifically retains sovereign immunity for tort claims against the United States for "loss, miscarriage, or negligent transmission" of the mails or postal matter." 28 U.S.C. § 2680(b).

*States*, 278 F. Supp. 441, 443 (N.D. Oh. 1968)); *see also Elsass*, 2003 WL 21537730 at *2 (same). The postal regulations are published in the United States Postal Service's Domestic Mail Manual ("DMM"), which are incorporated by reference into the Code of Federal Regulations and thus deemed published in the Federal Register. *See* 39 C.F.R. § 111.1 (incorporating by reference the DMM); *id.* at § 211.2(a)(2) (establishing that the regulations of the Postal Service include, amongst other manuals, the Domestic Mail Manual).

The DMM allows for "indemnity claims" to be filed for insured mail and provides specific procedures for filing the claim as well as subsequent appeals. *See* United States Postal Service, Domestic Mail Manual, §§ 609.1, 609.6, http://pe.usps.gov/text/dmm300/609.htm; *see also* Classification Schedule 943 (Insurance), Domestic Mail Classification Schedule ("DMCS"), 39 C.F.R. Part 3001, sub.pt. C, App. A. (classifying insured mail). In order to seek recovery for the loss of insured mail against the Postal Service, the aggrieved party must first exhaust all "administrative remedies available under the postal regulations before commencing [his] action [in district court]." *McBride v. USPS*, No. 07-C-0446, 2007 WL 1965337, *2 (E.D.N.Y. June 29, 2007) (citing cases). It appears from the facts in this case that Mr. Barton has exhausted his administrative remedies, and the Postal Service has not argued otherwise.

This Court's standard of review is governed by the Administrative Procedure Act, which provides that a reviewing court may not overturn a Postal Service action unless it was arbitrary and capricious. 5 U.S.C. § 706(2); *see also Rogers v. USPS*, No. Civ. A. 7:05CV158, 2005 WL 3369982, at *3 (W.D. Va. Dec. 12, 2005); *Elsass*, 2003 WL 21537730 at * 2. An agency's actions are presumed correct and fair, and the plaintiff has the burden of overcoming that presumption. *E.g., Arkansas Poultry Fed. v. U.S. Envtl. Prot. Agency*, 852 F.2d 324, 325 (8th Cir. 1988). Under the

7

"arbitrary and capricious" standard, a reviewing district court "must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . [and] is not empowered to substitute its judgment for that of the agency.'" *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)).

As an initial matter, the Court notes that there are some conflicts in the evidence. For instance, Mr. Barton and his witness, Ms. Logan, agree that the cement block was first discovered by them at their home; however, Mr. Barton testified that he opened the package alone in his office and then called in Ms. Logan to examine the cement block whereas Ms. Logan testified that she and Mr. Barton were in the living room together when they opened the box and found the block. Although perhaps a minor inconsistency, such a discrepancy is telling in resolving questions of credibility and the accuracy of Mr. Barton's recollection of the events surrounding his packaging and shipping of the box over two years ago.

Mr. Barton has not submitted copies of the Postal Service letters denying his claim at each step of the claim and appeal process, and, thus, has not identified to the Court any specific deficiencies in the Postal Service's decision to deny his insurance claim. Ms. Peterson's trial testimony was that the insurance claim was denied because it appeared that the box had only been opened one time from observing the box and given that the mailing label in Mr. Barton's handwriting was placed over the red, white, and blue mailing tape that sealed the box and was solidly affixed to the box.

As to Mr. Barton's argument that the red, white, and blue tape proves that a postal employee tampered with the contents of the box because he speculates that someone might have opened the

8

box, removed the label, re-taped the box, and put the label on top of the new tape, the Court observes that Ms. Logan identified the handwriting on the mailing label to be Mr. Barton's. As Ms. Logan acknowledged from the witness stand, the label is affixed on top of the red, white, and blue tape. Ms. Peterson also testified that, from her examination of the box, the red, white, and blue postal tape was placed on the box as part of the original mailing. Ms. Peterson testified that it was not possible to remove the label and reaffix it to the box. The Court has also examined the box and the label. The label is firmly affixed on top of the red, white, and blue tape and is of a quality that to remove it and replace it without damage to the handwritten portion would have been difficult. From an examination of the box, it appears that the red, white, and blue postal tape was put on the box as a part of the original mailing, not to carry out a theft while the box was in the custody of the Postal Service. The Court finds that Mr. Barton has failed to provide evidence that the box was tampered with while in the custody of the Postal Service sufficient for this Court to overturn the Postal Service's denial of his insurance claim.

At trial, the Postal Service argued that the timing of the series of events leading to Mr. Barton's decision to send the box notwithstanding PayPal's hold on the payment from Combs allows reasonable inferences to be drawn that Mr. Barton knew the sale had fallen through, that he attempted to make a claim on PayPal through the Seller Protection Plan, and that when that failed, he attempted to make a claim on the insured mail through the Postal Service by placing the cement block in the box. Mr. Barton explained that the dates on the PayPal documents are not necessarily the dates that he actually received the notices, as there are often two- to three-day delays in the PayPal system updates. Thus, he argued that he did not know that the payment from Combs had failed at the time he sent the box. He also argued that he felt confident in shipping the box to the

9

name and address on the PayPal account, even though it was different than the eBay buyer, because it was a verified shipping address. The Court finds that it is unnecessary to entertain these proposed inferences given that Mr. Barton has failed to offer sufficient evidence to reverse the Postal Service's denial of his insurance claim.

Considering all of the evidence, the Court finds that Mr. Barton has not met his burden of demonstrating that the Postal Service's actions in denying his insurance claim were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."

## CONCLUSION

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that Plaintiff Dale A. Barton take nothing by his Complaint and judgment is entered in favor of Defendant United States Postal Service. The Clerk of this Court is **DIRECTED** to enter final judgment accordingly.

So ORDERED this 7th day of May, 2009.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record